IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:

| | | | |
|---|---|---|---|
| **DONNIE E. SHULL, JR.** | } Debtor(s) | Chapter: | **13** |
| **DONNIE E. SHULL, JR.** | } Plaintiff(s) | Case Number: | **1-12-bk-04856 RNO** |
| | vs. | Adversary No: | **1-12-ap-00308 RNO** |
| **PNC BANK** | } Defendant(s) | | |

## OPINION

This Adversary Proceeding was commenced by a six-paragraph Complaint to Determine Extent of Secured Status filed by the Plaintiff, Donnie E. Shull, Jr., ("Debtor" or "Plaintiff") against the Defendant, PNC Bank, ("Bank"). On April 5, 2013, the Debtor filed a Motion for Summary Judgment. On April 8, 2013, the Bank, in turn, filed its Motion for Summary Judgment. For the reasons stated below, I will grant the Bank's Motion for Summary Judgment and deny the Debtor's Motion for Summary Judgment.

**I.    JURISDICTION**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2). This is a core proceeding under 28 U.S.C. § 157(b)(2)(K).

**II.    FACTS**

The Debtor filed a Chapter 13 bankruptcy on August 17, 2012. The Debtor has filed a Chapter 13 Plan to which the Bank has objected and, at this writing, there is no confirmed Chapter 13 plan.

The Complaint is titled "Complaint to Determine Extent of Secured Status". Essentially, the Complaint avers that the Bank's mortgage is in a second position and that its lien on the

Debtor's residence ". . . is also by its terms secured by rents and personal property." Pl.'s Compl. ¶ 4. The Complaint further alleges that the market value of the Debtor's residence is $143,000.00 and prays that the Bank's second mortgage ("Mortgage" or "Bank's Mortgage") be reduced to $43,301.64, the alleged remaining equity in the residence after the allowance of a first mortgage held by JP Morgan Chase.

The Bank timely answered the Complaint. The Answer affirmatively avers that the Mortgage does not grant the Bank the right to collect rents. Further, the Answer alleges ". . . a security interest is granted to PNC Bank that is limited to fixtures." Def.'s Answer ¶ 4. The Answer further avers that modification of the Bank's Mortgage is prevented by the anti-modification provisions contained in 11 U.S.C. § 1322(b)(2).[1]

The dueling Motions for Summary Judgment have been briefed and those matters are ripe for decision.

### III. DISCUSSION

#### A. **Summary Judgement Standard**

Summary judgment is governed by Federal Rule of Civil Procedure 56 which is made applicable to bankruptcy adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2552 (U.S. 1986). The moving party has the burden of

---

[1] Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("BAPCPA").

demonstrating that a genuine issue of material fact is absent. *In re Madera*, 363 B.R. 718, 724 (Bankr. E.D. Pa. 2007).

"In evaluating the evidence, a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 276 (3d Cir. 2001). Further, ". . . at the summary judgment stage the judge's function is not to himself weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2511 (U.S. 1986).

**B.     Anti-Modification Clause**

Chapter 13 of the Bankruptcy Code vests a debtor with significant rights and responsibilities. For example, subject to notice and an opportunity to be heard, a Chapter 13 debtor may sell property during the pendency of the Chapter 13 proceeding. 11 U.S.C. § 1303. Further, if a Chapter 13 debtor obtains confirmation of his or her Chapter 13 plan, after the completion of payments under the plan, the Chapter 13 debtor will receive a discharge. The Chapter 13 discharge is broader in certain respects than the discharge obtained under Chapter 7 or 11. For example, obligations which are within the ambit of § 523(a)(15) - generally, obligations to a former spouse incurred in the course of a divorce - are dischargeable in a Chapter 13 proceeding. 11 U.S.C. § 1328(a)(2).

A Chapter 13 plan may also provide for the curing or waiving of any default. 11 U.S.C. § 1322(b)(3); *In re Connors*, 497 F.3d 314, 318 (3d Cir. 2007).

However, a Chapter 13 debtor's ability to modify the rights of the holders of a secured claim, like the Bank, is not unlimited. Section 1322(b)(2) provides that a plan may:

3

Case 1:12-ap-00308-RNO    Doc 15    Filed 05/31/13    Entered 05/31/13 09:53:49    Desc
Main Document      Page 3 of 11

> modify the rights of holders of secured claims, **other than a claim secured only by a security interest in real property that is the debtor's principal residence** . . .

(emphasis added). The Third Circuit has noted, with respect to § 1322(b)(2), often referred to as the anti-modification clause:

> The legislative history of § 1322(b)(2) indicates that it was designed to protect and promote the increased production of homes and to encourage private individual ownership of homes as a traditional and important value in American life. The statute does that by affording anti-modification protection to home mortgage lenders in order to encourage the flow of capital into the home lending market.

*In re Ferandos*, 402 F.3d 147, 151 (3d Cir. 2005) (internal citations omitted).

The scope of the protection provided to a residential mortgage lender under the anti-modification clause was effectively broadened when the Bankruptcy Code was amended in 2005 by the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"). BAPCPA did so by defining the term "debtor's principal residence" as:

> (13A) The term "debtor's principal residence" --
>
> > (A) means a residential structure if used as the principal residence by the debtor, including **incidental property**, without regard to whether that structure is attached to real property;

11 U.S.C. § 101(13A) (emphasis added); *See also, In re Lunger*, 370 B.R. 649, 651 (Bankr. M.D. Pa. 2007) (security interest in escrow account did not obviate anti-modification restriction).

The Bankruptcy Code now defines the term "incidental property" with respect to a debtor's principal residence as:

> (A) property commonly conveyed with the principal residence in the area where the real property is located;

4

> (B) all easements, rights, appurtenances, fixtures, rents, royalties, mineral rights, oil or gas rights or profits, water rights, escrow funds, or insurance proceeds; and,
>
> (C) all replacements or additions.

11 U.S.C. § 101(27B); *In re McDonald*, No. 07-11721, 2008 WL 2230073, at *1 (Bankr. W.D. Pa. 2008).

### C. Provisions of the Subject Mortgage

A copy of the Bank's Mortgage, which the Debtor seeks to modify, is attached to Proof of Claim No. 6, filed by the Bank in the Chapter 13 case. The language in the Mortgage principally at issue herein is the provision that:

> Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

Bank's Mortgage 1.

The Mortgage refers to the Debtor's residential real property as the "Real Property". I note that page 4 of the Mortgage provides:

> SECURITY AGREEMENT; FINANCING STATEMENTS. The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:
>
> > Security Agreement. This instrument shall constitute a Security Agreement **to the extent any of the Property constitutes fixtures**, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.
> >
> > Security Interest. Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in

5

> the Rents and Personal Property. In additional to
> recording this Mortgage in the real property
> records, Lender may, at any time and without
> further authorization from Grantor, file executed
> counterparts, copies or reproductions of this
> Mortgage as a financing statement. Grantor shall
> reimburse Lender for all expenses incurred in
> perfecting or continuing this security interest. Upon
> default, Grantor shall not remove, sever or detach
> the Personal Property from the Property. Upon
> default, Grantor shall assemble any Personal
> Property not affixed to the Property in a manner and
> at a place reasonably convenient to Grantor and
> Lender and make it available to Lender within three
> (3) days after receipt of written demand from
> Lender to the extent permitted by applicable law.

Bank's Mortgage 4 (emphasis added). The gravamen of the Debtor's argument is that the language of the Mortgage removes it from the anti-modification provisions of § 1322(b)(2). Page seven of the Debtor's Brief in Support of the Motion for Summary Judgment states "the very language of the Mortgage removes PNC's anti-modification protection. In addition to fixtures, which, under Pennsylvania law, would be real property, the Mortgage clearly indicates that it is secured by equipment and other articles of personal property."

The Bank counters that its interest in personal property is limited to items of personal property which are fixtures. Bank's Rep. Br. 2.

### D. Extent of Security Interest

Generally, property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such property interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Similar treatment of property interests by both state and federal courts within a state serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving a

6

windfall merely by reason of the happenstance of bankruptcy. The justifications for the application of state law are not limited to ownership interests; they apply equally to security interests, including the interest of a mortgagee and rents earned from the mortgaged property. *Butner v. US*, 440 U.S. 48, 55, 99 S.Ct. 914, 918 (U.S. 1979). Also, while federal law defines what interests constitute property of the bankruptcy estate, state law generally determines what interest, if any, a debtor has in property. *In re Salem Baptist Church of Jenkintown*, 455 B.R. 857, 865 (Bankr. E.D. Pa. 2011). Pennsylvania law is applicable to determine property interests in a bankruptcy estate. *In re Smith*, 449 B.R. 221, 222 (Bankr. M.D. Pa. 2011).

The Mortgage includes definitions which begin on page six. The Mortgage provides, in part:

> **PERSONAL PROPERTY**. The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, **and now or hereafter attached or affixed to the Real Property**; together with all accessions, parts, and additions to, all replacements of and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

(emphasis added). On its face, that definition limits the grant of a security interest to only items of personal property which constitute fixtures. The definition limits Personal Property to items attached or affixed to the Real Property, the Debtor's principal residence.

A mortgage provision must be construed to effectuate the intention of the parties to the same extent as other contractual provisions. *Cloverleaf Development, Inc. v. Horizon Financial F.A.*, 500 A.2d 163, 168 (Pa. Super. 1985). The Pennsylvania Supreme Court has noted, "when the payment of principal is due depends upon the wording of the mortgage and of course the intention of the parties thereto." *Mahoney v. Furches*, 468 A.2d 458, 460 (Pa. 1983).

7

Absent some ambiguity, contracts should be construed in accordance with the plain and ordinary meaning of their terms. *American Legacy Foundation, RP v. National Union Fire Ins. Co. of Pittsburgh, PA*, 623 F.3d 135, 139 (3d Cir. 2010). Further, "a contract is not rendered ambiguous by the mere fact that the parties do not agree upon the proper construction." *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 364 (3d Cir. 2004) (internal citations and quotations omitted). Generally, the intent of the contracting parties is first ascertained from the writing itself. *Martin v. Monumental Life Ins. Co.*, 240 F.3d 223, 232-33 (3d Cir. 2001). If the language is clear and unambiguous, the "intent as reflected in the express language chosen by the parties must be given effect." *Morris v. Wells Fargo Bank N.A.*, No. 11-474, 2012 WL 3929805, at *6 (W.D. Pa. Sept. 7, 2012).

The Debtor maintains that the grant of the security interest to the Bank includes "equipment" and "other articles of personal property". Pl.'s Br. in Supp. of Summ. J. 8. I find that the definition of "Personal Property" on page six of the Mortgage delimits the grant of a security interest to items of personal property "now or hereafter attached or affixed to the Real Property . . ." The Real Property is, of course, the Debtor's residence, the primary collateral for the subject loan. I conclude that the language of the Mortgage concerning the grant of a security interest is clear and unambiguous and its plain meaning should be given effect as reflecting the intentions of the Debtor and the Bank.

### E.  Fixtures as Incidental Property

The Briefs of both the Debtor and the Bank cited a decision from the Bankruptcy Court for the Western District of Pennsylvania, *In re Jordan*, 403 B.R. 339 (Bankr. W.D. Pa. 2009). In that case, Judge Agresti considered a complaint seeking to modify a mortgage held by Green

8

Tree Consumer Discount Company ("Green Tree"), the collateral included a parcel of real estate and a security interest in a mobile home placed there. The debtors were using the mobile home as their principal residence. The procedural posture of *Jordan* was very similar to the case at bar. Green Tree defended the attempted modification of its loan by invoking the § 1322(b)(2) anti-modification provision. Both the debtors and Green Tree moved for summary judgment.

While the procedural posture of *Jordan* is similar to the instant case, I find it to be factually and legally distinguishable. In *Jordan*, Judge Agresti examined whether or not the mobile home placed on the debtors' real estate constituted a fixture under Pennsylvania law. The decision includes a learned recitation of Pennsylvania law regarding chattels used in connection with real estate noting that such chattels fall into one of three classes:

> (1) those which are manifestly furniture, which always remain personalty; (2) those which are so annexed to the property that they cannot be removed without material injury to the real estate, which are always realty; and, (3) those which, although physically annexed to the realty can be removed without materially injuring either the chattels themselves or the realty, which can become part of the realty or remain personalty depending on the intention of the parties at the time of annexation.

*Jordan*, 403 B.R. at 349. The *Jordan* court focused on the characterization of the disputed item, namely, the mobile home. The Bankruptcy Court considered a number of factors, including that Green Tree's proof of claim described its collateral as "other", rather than "real estate", and the fact that the mobile home was not situate on the subject real estate at the time the loan was signed. The Court also noted that there was nothing in the loan documents stating that the mobile home would become part of the real estate. Judge Agresti granted summary judgment to the debtors but noted that his decision was a narrow one, stating, "[t]his case, however, was decided on its particular facts and it is not intended to declare a blanket rule that would always

9

Case 1:12-ap-00308-RNO    Doc 15    Filed 05/31/13    Entered 05/31/13 09:53:49    Desc
Main Document      Page 9 of 11

deny such creditor protection in similar circumstances." *Jordan*, 403 B.R. at 355.

I distinguish *Jordan* from the case at bar on two bases. First, nothing in this record identifies an item whose characterization as personalty or a fixture is disputed between the Debtor and the Bank. Second, in the Mortgage, the Debtor and the Bank agreed that the Bank's lien would attach to personal property "now or hereafter owned by Grantor [Debtor], and now or hereafter attached or affixed to the Real Property." Bank's Mortgage 6. I find that this clear language limits the grant of a security interest to items which would constitute fixtures under Pennsylvania law. *Noll by Noll v. Harrisburg Area YMCA*, 643 A.2d 81, 86-87 (Pa. 1994); *Blocker v. City of Philadelphia*, 763 A.2d 373, 375 (Pa. 2000).

## IV.  CONCLUSION

Section 1322(b)(2) provides that a secured claim secured only by a security interest in the debtor's principal residence may not be modified. Section 101(13A) defines the "debtor's principal residence" to include incidental property. Section 101(27B) provides:

> (27B) The term "incidental property" means, with respect to a debtor's principal residence --
>
> (A) property commonly conveyed with a principal residence in the area where the real property is located;
>
> (B) all easements, rights, appurtenances, **fixtures**, rents, royalties, mineral rights, oil or gas rights or profits, water rights, escrow funds, or insurance proceeds; and,
>
> (C) all replacements or additions.

(emphasis added).

I conclude that the security interest in fixtures granted to the Bank by the Debtor

10

constitutes such incidental property. I, therefore, conclude that the anti-modification provisions of § 1322(b)(2) are applicable to the subject Mortgage. I also find that there is no outstanding material issue of fact and conclude that the Bank is entitled to judgment as a matter of law. I, therefore, grant the Bank's Motion for Summary Judgment and, in turn, deny the Debtor's Motion for Summary Judgment.

    Orders will be entered consistent with the foregoing Opinion.

By the Court,

*Robert N. Opel II*
_____
Robert N. Opel, II, Bankruptcy Judge
(BI)

Date: May 31, 2013